Industrial Commodity Corporation, a Corporation, Plaintiff-Appellee, v. E. J. Brach & Sons, a Corporation, Defendant-Appellant.

Gen. No. 52,228.

First District, Third Division.
February 15, 1968.
Rehearing denied March 15, 1968.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Jerome A. Frazel, Jr. and Roy C. Palmer, of counsel), for appellant.

Teller, Levit & Silvertrust, of Chicago (Leo H. Feldman, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This action was brought for damages resulting from an alleged breach of contract. The trial court entered judgment for the plaintiff on the pleadings and the defendant appealed.

On August 18, 1965, the plaintiff, Industrial Commodity Corporation, and the defendant, E. J. Brach &

Sons, entered into an agreement prepared by the plaintiff which provided that it would render forecasting services concerning the price of cocoa, and the defendant would pay $800 per month for these services. The term of the agreement was as follows:

"The term of this arrangement is for at least six months, beginning August 18, 1965. This contract will continue for another six months, unless and until terminated by not less than sixty (60) days in advance of the renewal date, written notice to the effect given by either party to the other. Thereafter, in the second and subsequent years, this contract will continue from year to year unless and until terminated by not less than ninety (90) days in advance of the anniversary date, August 18, written notice to the effect given by either party to the other."

Neither party cancelled the contract sixty days or more prior to the expiration of the first six months, and the contract was therefore renewed on February 18, 1966, for a second term of six months. Thereafter, on June 2, 1966, during the second six-month term, the defendant gave the plaintiff the following notice of termination:

"Under the terms of our Purchase Order No. 383–65, dated August 18, 1965, we reserve the right to cancel your service on 60-day written notice. Please accept this letter as our prior written notice of cancellation. The effective date of above mentioned cancellation shall be August 17, 1966."

On the basis of this notice, the defendant refused to accept the plaintiff's services after August 18, 1966. In December 1966, the plaintiff filed the present action, charged that the defendant breached the contract and claimed damages of $800 per month for the period of August 18, 1966, to August 18, 1967. The defendant

answered, denied that it broke the agreement and asserted that the contract was cancelled by proper notice. The plaintiff filed a reply and a motion for judgment on the pleadings. In its reply the plaintiff maintained that the defendant's notice was not in compliance with the terms of the contract. Its motion for judgment was granted and a judgment for $9,600 was entered against the defendant.

The dispute concerns the interpretation of the cancellation provision of the contract. The plaintiff contends that in order to cancel the contract as of August 18, 1966, the first anniversary of the contract, the defendant had to give ninety days' notice. In contrast, the defendant contends that the agreement made no provision regarding cancellation at the end of the second six-month term, which was August 18, 1966, and that the giving of sixty days' notice in advance of that date was adequate and effectively cancelled the agreement.

■■ In construing a contract, the determining factor, if not violative of some positive rule of law or of public policy, is the intention of the parties. Olson v. Rossetter, 399 Ill 232, 77 NE2d 652 (1948); Illinois State Toll Highway Commission v. M. J. Boyle & Co., 38 Ill App2d 38, 186 NE2d 390 (1962). The intention of the parties to a contract must be determined from the language employed in the contract and where there is no ambiguity, from such language alone. Harrison v. Harrison, 326 Ill App 678, 63 NE2d 283 (1942); Illinois State Toll Highway Commission v. M. J. Boyle & Co., supra.

We find no ambiguity in the contract. The intention of the parties concerning the termination of the agreement is expressed in a simple paragraph consisting of three sentences. The first sentence provides that the agreement will continue for no less than six months. The second sentence provides that the agreement will continue for an additional six-month period, unless a notice to terminate is sent sixty days prior to the expira-

166

tion of the first six-month period. The third sentence provides that once into the second year the agreement will continue from year to year until terminated by at least a ninety-day notice in advance of the anniversary date, August 18.

The third sentence which is the crux of the controversy bears repetition:

"Thereafter, in the second and subsequent years, the contract will continue from year to year unless and until terminated by not less than ninety (90) days in advance of the anniversary date, August 18, written notice to the effect given by either party to the other."

 The plaintiff construes the ninety-day notice requirement as applying to August 18, 1966. It arrives at this construction by treating as surplusage the phrase "in the second and subsequent years." If this phrase were surplusage the ninety-day requirement would apply to 1966 as well as to 1967 and subsequent years. But, if possible, every provision and word in a contract must be given meaning and effect because it is assumed that everything in a contract is inserted deliberately and for a purpose. DeTienne v. S. N. Nielsen Co., 45 Ill App2d 231, 195 NE2d 240 (1963) ; O'Fallon Development Co. v. Rheinbold, 69 Ill App2d 169, 216 NE2d 9 (1966). The words "in the second and subsequent years" cannot be ignored; they plainly mean that the ninety-day provision takes effect *in the second year* of the contract, and the second year is the year ending in August 1967. The contract does not say that ninety days' notice shall be given at the end of the first year or at the start of the second year, but rather that this shall be done after the contract is *in* the second year. The anniversary date, August 18, does not mean, therefore, the first anniversary of the contract but those anniversaries which occur after the contract has entered into its second year. As we have

167

said, we perceive no ambiguity in this phraseology, but if it were otherwise the same result would be reached for the rule is that a contract must be construed most strongly against its author. Dixon v. Montgomery Ward & Co., Inc., 351 Ill App 75, 114 NE2d 44 (1953).

Since the contract contains no provision for cancellation at the end of the first year, the defendant was entitled to cancel it as of the first anniversary date, August 18, 1966, by giving reasonable notice prior to that date. The sixty-day notice was a reasonable one and effectively cancelled the agreement, and the defendant thereafter had the right to refuse the plaintiff's services.

The judgment in favor of the plaintiff will be reversed and the cause remanded with directions to enter judgment for the defendant.

Reversed and remanded with directions.

SCHWARTZ and SULLIVAN, JJ., concur.