KENT R. FARNSWORTH, SR., Plaintiff-Appellee, *v.* CARL A. LAMB *et al.*, Defendants—(EVELYN I. HENRY *et al.*, Defendants-Appellants.)

(No. 11522; )

Fourth District—August 2, 1972.

Herrick, Rudasill & Moss, of Clinton, (Ray Moss, of counsel,) for appellants.

Webber, Welsh & Kehart, of Decatur, (Richard J. Welsh, of counsel,) for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This case comes to us from the Circuit Court of DeWitt County on a judgment entered on a jury verdict in favor of the Plaintiff, Kent R. Farnsworth, Sr., and against the Defendants, Carl A. Lamb and Norma Lee Lamb, and the Defendants Evelyn I. Henry and Jack Henry d/b/a Henry Realty, in the amount of $2,700.00. Only the Defendants Evelyn I. Henry and Jack Henry have appealed.

The record reveals that in January, 1969, the Lambs were the owners of certain property located near Farmer City, Illinois. On January 9th they entered into a real estate listing contract with Evelyn I. Henry wherein they granted Mrs. Henry the exclusive right to sell the property in question for a specified period of time and agreed to pay her a commission in the amount of five per cent of the sale price. The listing contract further provided that the commission was due and payable when a contract of purchase was signed. At the time this listing contract was

consummated, Mrs. Henry was a licensed real estate broker and the owner of a real estate agency operating under the name of "Henry Realty." Her husband, Jack Henry, was a real estate salesman who worked with his wife in the operation of the agency.

Pursuant to their listing agreement the Henrys began to solicit prospective buyers for the Lambs' property. In response to an advertisment placed in a Decatur newspaper, the Plaintiff, Kent F. Farnsworth, Sr., and his wife became interested in the property. The Farnsworths were shown the property by either Mr. or Mrs. Henry and a series of negotiations then ensued between the parties that culminated in a written Contract for Sale of Real Estate executed on March 15, 1969, by Mr. Farnsworth and the Lambs. This contract was a printed "form" contract with various blank spaces for the insertion of the pertinent details. It was prepared on the date of its execution by Mrs. Henry who typed it in the kitchen of the property owned by the Lambs while Mr. Henry, Mr. Farnsworth and Mr. and Mrs. Lamb remained in the living room. The contract, minus the legal description of the property and a listing of certain items of personal property that were included in the purchase price, provided as follows (the italicized language was typewritten; the remainder was part of the printed form):

## CONTRACT FOR SALE OF REAL ESTATE

RECEIVED of *KENT R. FARNSWORTH Two Thousand seven hundred and no/100 - - - - -* Dollars, as part payment toward the purchase of the following described Real Estate:

[Here there was inserted a legal description of property together with list of personal property.]

which is hereby bargained and sold to the said *Kent R. Farnsworth* for the sum of *Twenty seven thousand and no/100 - - - - - - -* Dollars, *Twenty four thousand three hundred and no/100 - - - - - -* Dollars, more to be paid on the delivery of a good and sufficient Warranty Deed of Conveyance for the same within *90 - - -* days from this date, or as much sooner thereafter as the Deed is ready for delivery, after the title has been examined and found good, and the balance to be paid as follows: *cash in hand upon delivery of a good and sufficient Warranty Deed of Conveyance, the amount of $24,300.00.*

To be secured by Trust Deed or Mortgage on the property above described. Should the title to the property not prove good, then this *$2,700.00* to be refunded. But should the said *Kent R. Farnsworth* fail to perform this Contract on his part promptly at the time and in the manner above specified (time being of the essence of this Contract),

then the above *Two thousand seven hundred and no/100* - - - - Dollars shall be forfeited by *him* as liquidated damages, and the above contract shall be and become null and void.

On the date the contract was executed Mr. Farnsworth tendered a cashier's check in the amount of $2700.00 to either Mr. Lamb or to Mr. Henry. This check was then given to Mrs. Henry who endorsed it payable to the escrow account of Henry Realty. The testimony disclosed that the Henry's later paid one-half of this down payment, $1350.00, to Mr. and Mrs. Lamb and retained the other one-half in payment of their real estate commission.

After the contract was signed Mr. and Mrs. Farnsworth attempted to secure financing to pay the balance of the purchase price. In this record they enlisted the services of Mr. Henry who assisted them in submitting written applications to savings and loan associations in Leroy and Gibson City. Mrs. Farnsworth also contacted a number of area lending institutions by telephone in the hope of obtaining a mortgage loan. Unfortunately, the Farnsworths' efforts proved fruitless due to the fact that during this period of time home mortgage money was scarce and the lending institutions they contacted were not making 90% loans, the type needed by the Farnsworths to finance their purchase.

Consequently, on May 21, 1969, counsel for Mr. Farnsworth wrote to the Lambs and informed them that the Farnsworths could not obtain a mortgage on the property. Unless the Lambs were willing to finance the remainder of the purchase price themselves, Mr. Farnsworth stated that he wished his "earnest money" of $2700.00 returned at once. When both the Lambs and the Henrys adamantly refused to return the $2700.00 to him, Mr. Farnsworth filed suit.

The complaint filed by Mr. Farnsworth was directed against both the Lambs and the Henrys and alleged, in essence, the facts set forth above. In addition, the complaint asserted that in the event Mr. Farnsworth could not obtain a loan for the balance of the purchase price, then the defendants had agreed to refund the $2700.00 earnest money. The complaint went on to declare that a mortgage could not be obtained and that the defendants failed to honor Mr. Farnsworth's request for the return of his earnest money. At the outset the Henrys filed a motion to dismiss on the ground that the contract in question was not ambiguous and, therefore, parol evidence would be inadmissible to explain or add to its tenor. This motion was denied by the trial court and the case proceeded to a trial by jury.

At the trial virtually all of the parties admitted that there had been

some discussion between Mr. Farnsworth and the Henrys and between Mr. Farnsworth and the Lambs to the effect that Mr. Farnsworth was going to have to obtain financing in the form of a mortgage to purchase the Lamb property. Both Mr. and Mrs. Lamb testified that prior to the signing of the real estate contract they knew that Mr. Farnsworh had to secure a mortgage in order to complete the purchase. Mrs. Henry testified that one week prior to the contract's execution she was present at the property with Mr. and Mrs. Farnsworth and the subject of financing was discussed although she did not remember the exact details of the conversation. Mr. Henry admitted that when Mr. Farnsworth first looked at the Lamb property he mentioned he would have to obtain a loan in order to purchase it.

At the trial both Mr. Farnsworth and his wife testified that on several occasions prior to the execution of the contract they had specifically inquired of both the Lambs and the Henry what would happen to their $2700.00 down payment in the event that they could not obtain a mortgage to finance the balance of the purchase price. On each occasion they were told that if they could not obtain financing then the $2700.00 would be returned. These statements were denied by the Lambs and the Henry's. The jury, however, returned a verdict in favor of Mr. Farnsworth for the full $2700.00.

The Henrys have posed three grounds for reversal on their appeal. First, they contend that the contract entered into between the Lambs and Mr. Farnsworth was not ambiguous as a matter of law and, therefore, the trial judge erred in allowing testimony into the record concerning the alleged statements by the Lambs and Henrys that the $2700.00 would be returned in the event the Farnsworths could not obtain financing. Second, they claim they were entitled to their real estate commission at the time the contract was signed despite the fact that it was never performed. Finally, they urge that the trial court should have given a verdict form that would have allowed the jury to find in favor of Farnsworth and against the Lambs but not against themselves. Since the Henrys failed to file a counterclaim against the Lambs for their commission, their argument in this regard contains no merit whatsoever and is completely irrelevant to this appeal.

■■ The law is clear that if a written contract between parties is clear and its language unequivocal then parol evidence may not be received by the trier of fact to explain or expand upon its terms. On the other hand, if the language contained in the contract is ambiguous or silent as to essential terms then oral testimony may be properly admitted into evidence. (*Weiland Tool and Manufacturing Co. v. Whitney* (1969), 44 Ill.2d 105, 114, 251 N.E.2d 242; *Martindell v. Lake Shore National*

*Bank* (1958), 15 Ill.2d 272, 283-84, 154 N.E.2d 683; *Stevens v. Fanning* (1965), 59 Ill.App.2d 285, 292-93, 207 N.E.2d 136; *Spitz v. Brickhouse* (1954), 3 Ill.App.2d 536, 539-40, 123 N.E.2d 117.) Thus, in the last case cited the plaintiffs Spitz had sued the defendant Brickhouse to recover an architect's fee under a written contract. The defendant contended, and the trial court agreed, that the plaintiffs had breached the contract by failing to design a home costing no more than $25,000.00. This price limitation was not part of the written contract but the defendant asserted that the parties had orally agreed upon it and the trial judge accepted evidence in this regard. The Appellate Court upheld the admission of this parole testimony with the following language:

"The law is well established that where a written contract is uncertain, ambiguous or incomplete, evidence of a contemporaneous oral agreement to prove the entire contract is admissible. *Scholbe v. Schuchardt*, 292 Ill. 529, 534. Whether it was intended to be their complete and final agreement is to be determined from the circumstances of the case. *Fuchs & Lang Co. v. R. J. Kittredge & Co.*, 242 Ill. 88, 94. If it is silent in essential particulars, parol evidence is admissible to establish the missing parts, although inadmissible to contradict those unambiguous terms expressed in the document. *Fuchs & Lang Co. v. R. J. Kittredge & Co. supra; Meyer v. Sharp*, 341 Ill.App. 431, 435.

The form contract in the instant case is silent as to the style of the house to be designed, the number of its rooms, its dimensions, the quantity and quality of the materials to be used in erecting it, and so on." *Spitz v. Brickhouse, supra.*

■■ Whether or not a contract is ambiguous such that parol evidence will be admitted is, of course, a question of law for the court to determine. "[a] contract is ambiguous if the words used by the parties are fairly susceptible of being understood in more than one sense." *LaSalle National Insurance v. Executive Auto Leasing* (1970), 121 Ill.App.2d 430, 437, 257 N.E.2d 508. "[a]n ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill.App.2d 335, 341, 260 N.E.2d 99.

■■ Reviewing the provisions of the real estate contract entered into between Mr. Farnsworth and the Lambs in light of the authorities cited above we hold that it is both ambiguous as a matter of law and silent as to an essential term. Hence, the trial judge did not err in permitting the plaintiff to introduce parol evidence to establish that the parties had agreed that in the event Mr. Farnsworth was unable to obtain financing

on the Lamb property his $2700.00 down payment would be returned.[1] As we have noted, the contract provided that the balance of the purchase price, $24,300.00, was to be paid in cash upon the delivery of a good and sufficient warranty deed. However, the contract then went on to state that the $24,300.00 balance was "[t]o be secured by Trust Deed or Mortgage on the property * * *." Did this language mean that the payment of the balance of the purchase price was contingent upon the buyer, Mr. Farnsworth, being able to obtain a trust deed or mortgage? If so, what would be the disposition of the down payment in the event that a trust deed or mortgage could not be secured? We cannot say that under the circumstances the language of the contract was not "fairly susceptible of being understood in more than one sense," *La Salle Nat'l Ins. v. Executive Auto Leasing, supra;* therefore, the contract was ambiguous as a matter of law and parol evidence was properly admitted to explain its terms.

The final point relied upon for reversal concerns the verdict forms given to the jury. The jury was given two forms of verdict which enabled them to find for the plaintiff Farnsworth and against all the defendants or in favor of the defendants and against the plaintiff. The Henrys tendered a verdict form that would have allowed the jury to return a verdict in favor of the plaintiff and against the Lambs but not against the Henrys. This verdict form was properly refused by the

---

[1] The parties to this appeal hinged their treatment of the parol evidence rule on the issue of whether or not the contract was ambiguous as a matter of law. The Henrys maintained that the contract was so clear and unequivocal that the parol evidence rule prevented the introduction of extrinsic evidence to explain its terms. Mr. Farnsworth, obviously, argued quite the contrary. However, it is possible to approach the problem from a different perspective and suggest that the oral agreement, if indeed there was one, between Farnsworth and the Lambs or the Henrys with respect to financing created a condition precedent on Farnsworth's duty to perform his part of the contract such that until this condition was fulfilled—until Farnsworth obtained suitable financing—Farnsworth had no legal obligation to perform and tender the balance of the purchase price. If in fact financing was a condition precedent to Farnsworth's duty to pay, then the parol evidence rule would not serve as a bar to testimony surrounding the creation of the condition precedent because there would be no legal duty on Farnsworth to perform until the condition was fulfilled.

This line of reasoning was first enunciated by the leading case of *Pym v. Campbell* (1856), 6 El. & Bl. 370. Unfortunately, this case has long been erroneously cited for the proposition that such a condition precedent goes to the very creation of the contract itself and that since there is no contract until the condition is performed the parol evidence rules does not apply. As Professor Corbin has pointed out, 3 *Corbin on Contracts,* Sec. 589, pgs. 318-29 (1951 ed.), the result is correct but the reasoning is faulty. For a compilation of cases dealing with financing as a condition precedent in a real estate contract, see *Anno.* "Vendor and purchaser: contract provision referring to purchaser's uncompleted arrangement for financing balance of purchase price as creating condition precedent," 81 ALR 2d 1338 (1962).

court under the evidence before it. The record unequivocally reveals that the $2700.00 down payment in question was given by Farnsworth to the Henrys and then divided between themselves and the Lambs. Whether or not the Henrys should have been able to retain one-half of this $2700.00 as their commission from the Lambs was not an issue in the case. Therefore, the verdict forms given encompassed the only two possible results the jury could have reached under the evidence and the trial court did not err in submitting them to the jury.

For the reasons expressed herein, the judgment of the Circuit Court of DeWitt County is affirmed.

Judgment affirmed.

CRAVEN, P. J., and SMITH, J., concur.